TELLURIAN U.C.A.N., INC., Plaintiff-Appellant,

v.

Patricia GOODRICH, Secretary of the State of Wisconsin
Department of Health & Social Services, and Village
of Marshall, Wisconsin,†
Defendants-Respondents.

Court of Appeals

*No. 91–1417. Submitted on briefs May 8, 1992.—Decided June
10, 1993.*

(Also reported in 504 N.W.2d 342.)

†Petition to review denied.

205

For the plaintiff-appellant the cause was submitted on the brief of *Beth Pepper* and *Ira A. Burnim* of *Judge David L. Bazelon Center for Mental Health Law* of Washington, D.C., and *Lee C. Erlandson*, of *Miller, Ramsell, Erlandson & Bochniak* of Madison.

For the defendant-respondent, Patricia Goodrich, Secretary of the Wisconsin Department of Health and Social Services, the cause was submitted on the brief of *James E. Doyle*, attorney general, with *Laura Dulski*, assistant attorney general.

For the defendant-respondent, Village of Marshall, the cause was submitted on the brief of *Bradley D. Armstrong* and *Michael J. Modl* of *Axley Brynelson* of Madison.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

GARTZKE, P.J.   Tellurian U.C.A.N., Inc. appeals from a judgment dismissing its complaint against the Village of Marshall and Patricia Goodrich, Secretary of the Department of Health and Social Services. Tellurian proposes to purchase and operate a house in the village as a group home for mentally ill persons. Section 62.23(7)(i)1., Stats., provides that such a group home may not be located within 2,500 feet of another like home, but the municipality may grant an exception.[1] Another group home already exists near Tellurian's proposed home and within the prohibited distance. The village refused to grant Tellurian an exception. Tellurian contends that the village's denial and the 2,500 foot restriction violate the Fair Housing Act (FHA), 42 U.S.C. § 3604(f).[2]

The issues are whether (1) *res judicata* bars Tellurian's action, (2) Tellurian's action is moot, (3) the village intentionally discriminated against the mentally handicapped, (4) the village failed to reasonably

---

[1] Section 62.23(7)(i)1., Stats., provides in relevant part:

No community living arrangement may be established after March 28, 1978 within 2,500 feet, or any lesser distance established by an ordinance of the city, of any other such facility. Agents of a facility may apply for an exception to this requirement, and such exceptions may be granted at the discretion of the city.

[2] 42 U.S.C. § 3604(f)(1)(B) and (3)(B) provides in relevant part: "[I]t shall be unlawful . . . [t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . a person . . . intending to reside in that dwelling . . . . [D]iscrimination includes . . . a refusal to make reasonable accommodations in rules, policies, practices or services . . . ."

208

accommodate Tellurian, and (5) the distance restriction violates the FHA.

We conclude on the basis of the undisputed facts that *res judicata* does not bar Tellurian's action, that Tellurian's claim for injunctive relief is moot but not its claims for damages and attorney's fees, that the village failed to reasonably accommodate Tellurian, and that no justiciable controversy exists regarding Tellurian's challenge to the distance restriction. We therefore affirm in part and reverse in part and remand for a determination of Tellurian's damages and attorney's fees.

## I.

In March 1989, Tellurian informed the village president of its intent to purchase the group home. On April 11, at a village board meeting, citizens raised questions and concerns regarding the proposed home. The board directed the village clerk to notify Tellurian of the strong and perhaps unanimous community opposition to the home.

In September 1989, Tellurian informed the board that it had exercised its option to purchase the home. On September 12, the board voted to notify Tellurian that because its proposed home was within 2,500 feet of the Shady Rest Elder House, a "community living arrangement" for ten elderly people, Tellurian would have to apply for an exception to the distance restriction in sec. 62.23(7)(i)1., Stats.

On October 3, 1989, Tellurian brought this action for injunctive and declaratory relief, damages, and its attorney's fees. On October 24, Tellurian moved for temporary injunctive relief from the distance restriction. While the motion was pending, on October 26 the board held a public hearing on Tellurian's application

209

for an exception. Several citizens and board trustees spoke at the hearing. All but one of the speakers opposed the group home. After discussion among the president and trustees, the board denied the exception.

On December 8, 1989, the trial court heard Tellurian's motion for the temporary injunction, and on December 15, 1989, the court denied the motion. In February 1991, Tellurian moved to dismiss its action because the evidence it presented at the temporary injunction hearing was similar to that it would present at trial. On April 8, 1991, the court granted Tellurian's motion.[3]

In July 1990, the United States Department of Justice (DOJ) brought an action against the village in federal district court. The DOJ asserted that the village board violated the FHA when it denied the exception. The court agreed, granted Tellurian an exception under sec. 62.23(7)(i)1., Stats., and awarded Tellurian compensatory damages. *United States v. Village of Marshall*, 787 F.Supp. 872, 879 (W.D. Wis. 1991); *United States v. Village of Marshall*, 787 F.Supp. 880, 881–82 (W.D. Wis. 1991).

II.

Because of the judgment in federal court, the village argues that *res judicata* bars Tellurian's state court action. *Res judicata* makes a final judgment conclusive in all subsequent actions between the same parties as to all matters which were or might have been litigated in the former proceedings. *DePratt v. West Bend Mut. Ins. Co.*, 113 Wis. 2d 306, 310, 334 N.W.2d

---

[3] No contention is made that because Tellurian moved to dismiss its action, it may not appeal.

210

883, 885 (1983). For the doctrine to apply, there must be an identity of parties or their privies and identical causes of action. *Desotelle v. Continental Cas. Co.*, 136 Wis. 2d 13, 21, 400 N.W.2d 524, 527 (Ct. App. 1986).

The village argues that because the DOJ represented Tellurian in the federal court action, the DOJ and Tellurian were in privity. The village cites RESTATEMENT (SECOND) OF JUDGMENTS § 41 (1982):

> (1) A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party. A person is represented by a party who is:
>
> . . . .
>
> (d) An official or agency invested by law with authority to represent the person's interests . . . .

We turn to the FHA to determine whether the DOJ represented Tellurian's interests in the federal court.

The FHA provides for three methods of enforcement: administrative complaints to the Department of Housing and Urban Development (HUD) under 42 U.S.C. secs. 3610–3612, lawsuits by private persons under sec. 3613, and civil actions by the DOJ under sec. 3614.

Private lawsuits, such as Tellurian's, and DOJ civil actions have some similarities but differ in significant respects.[4] Private persons may commence suit for an alleged discriminatory housing practice. 42 U.S.C. § 3613(a). But the DOJ may commence suit only if reasonable cause exists to believe that a defendant is engaged in a "pattern or practice" of resistance to the rights granted by the FHA, or when a person has been

---

[4] Similarities exist, for example, with regard to awarding damages and attorney's fees. 42 U.S.C. §§ 3613(c) and 3614(d).

211

denied these rights and the denial raises issues of "general public importance." 42 U.S.C. § 3614(a).[5] Unlike private persons, the DOJ may seek civil penalties of up to $100,000 "to vindicate the public interest." 42 U.S.C. § 3614(d)(1)(C). Private persons may bring suit in federal or state court, but the DOJ may bring suit only in federal court. 42 U.S.C. §§ 3613(a) and 3614(a). Finally, although an aggrieved person may file both a HUD complaint and a private lawsuit, ultimately only one adjudication will be allowed.[6] But Congress placed no such restriction on private lawsuits and DOJ actions:

> The private plaintiff and the Justice Department may decide to consolidate their claims against a defendant in a single lawsuit, but if they choose instead to proceed separately, neither is limited by what the other may do. For example, the Justice Department may settle its claim, while the private suitor continues to litigate. If both choose to litigate separately, the defeat of one claim will not bar the other.

R. Schwemm, *Housing Discrimination: Law and Litigation* § 25.1, at 25–4–5 (1992) (footnotes omitted).[7]

---

[5] The DOJ may also commence a suit upon referral from HUD. 42 U.S.C. § 3614(b).

[6] R. Schwemm, *Housing Discrimination: Law and Litigation* § 25.1, at 25–4 (1992) (Congress "intended to prevent multiple adjudication of the same alleged discriminatory housing practice") (quoting from H.R. REP. NO. 100–711, 100th Cong., 2nd Sess., at 39 (1988)).

[7] See, e.g., *Williamson v. Bethlehem Steel Corp.*, 468 F.2d 1201, 1203 (2nd Cir. 1972), *cert. denied*, 411 U.S. 931 (1973), where the court held that "[f]or purposes of res judicata or collateral estoppel, the private citizens in this [Title VII] case are not bound by the Attorney General's action in the former case

Because Tellurian's private action under sec. 3613 is independent of DOJ's action under sec. 3614, the DOJ and Tellurian were not in privity. No identity of parties or their privies exists. *Res judicata* does not apply. The federal court's judgment does not bar Tellurian's state court action.

## III.

Because of the federal court judgment, the village argues that this case is moot. After concluding that the village violated the FHA and granting the exception, the federal court held an evidentiary hearing on damages, attorney's fees, and costs. *United States v. Village of Marshall*, 787 F.Supp. 880, 880–82 (W.D. Wis. 1991). The DOJ contended that Tellurian incurred about $140,000 in damages and over $3,000 in attorney's fees. [8] The court awarded Tellurian $3,041 in damages and costs but no attorney's fees.

A case is moot "when a determination is sought upon some matter which, when rendered, cannot have any practical legal effect upon a then existing controversy." *In re G.S.*, 118 Wis. 2d 803, 805, 348 N.W.2d 181, 182 (1984). Thus, a case is moot when a party has obtained the relief to which it is entitled. *Evrard v. Jacobson*, 117 Wis. 2d 69, 72, 342 N.W.2d 788, 790 (Ct.

since they neither were parties to it . . . nor have interests such as to be in privity with the Attorney General." (Citations omitted.) *See also State v. Mechtel*, 176 Wis. 2d 87, 96, 499 N.W.2d 662, 667 (1993) (state prosecutor is not in privity with federal prosecutor).

[8] Tellurian says that it would likely claim the same amount in damages if we remanded the case for a determination of damages and fees.

213

App. 1983). We will not generally consider a moot issue. *City of Racine v. J-T Enterprises of America, Inc.*, 64 Wis. 2d 691, 700, 221 N.W.2d 869, 874 (1974).

The village argues that because Tellurian has received all the relief to which it is entitled, a decision by us cannot have any practical legal effect. We disagree. While Tellurian's request for injunctive relief is moot, its claims for damages and attorney's fees are alive.

Tellurian recovered $3,041 of the $140,000 it claims in damages. The DOJ's failure to prove up those damages in its federal court action does not bar Tellurian from doing so in its own action. The two actions are independent of each other, and Tellurian's claims survive a *res judicata* attack. Its claim for damages is not moot.[9]

The federal court found that Tellurian incurred over $3,000 in attorney's fees for its state court action and refused to award those fees primarily because Tellurian did not prevail in state court. Thus, if Tellurian prevails in this action, it may be entitled to attorney's fees. Its claim for attorney's fees is not moot.[10]

## IV.

The trial court found that the village did not intentionally discriminate against the mentally handicapped when it denied Tellurian the exception. The court held that some comments by members of the

---

[9] The village of course would be entitled to a credit for the amount the federal court awarded.

[10] In fair housing cases, it is not uncommon for some elements of requested relief to become moot while others do not. *See, e.g., Keith v. Volpe*, 858 F.2d 467, 471–72 (9th Cir. 1988), *cert. denied*, 493 U.S. 813 (1989); *Steptoe v. Beverly Area Planning Ass'n*, 674 F.Supp. 1313, 1316 n.3 (N.D. Ill. 1987).

public at the October hearing were discriminatory, but that evidence was insufficient to assign a discriminatory intent to the village board. In fact, the court noted, the evidence showed that the village dealt with Tellurian openly and honestly and considered nondiscriminatory factors when it denied the exception.[11]

Intent is a state of mind discoverable only by inference from the historical facts. "The drawing of an inference on undisputed facts when more than one inference is [reasonably] possible is a finding of fact which is binding upon an appellate court." *State v. Friday*, 147 Wis. 2d 359, 370, 434 N.W.2d 85, 89 (1989). We have reviewed the October hearing transcript and the evidence presented at the temporary injunction hearing. The trial court reasonably inferred that the village did not intentionally discriminate against the mentally handicapped. We uphold that finding.

## V.

Tellurian argues that by failing to grant it the exception, the village unlawfully discriminated by refusing to make a reasonable accommodation, contrary to 42 U.S.C. § 3604(f)(3)(B). That section provides in relevant part: "[D]iscrimination includes . . . a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommoda-

---

[11] The trial court's findings correspond with the federal district court's findings. The federal court found that the village "did not intentionally discriminate . . . and acted in good faith . . . . [E]fforts were made to cooperate fully with Tellurian." *United States v. Village of Marshall*, 787 F.Supp. 880, 881 (W.D. Wis. 1991).

tions may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . ."

The trial court made no findings or conclusions regarding reasonable accommodation. Here, however, the arguments of the parties and undisputed facts are such that whether the village failed to reasonably accommodate Tellurian is a question of law.

An accommodation is reasonable if it is "feasible and practical under the circumstances." 24 C.F.R. § 100.204, example (2) (1990). Stated otherwise, an accommodation is unreasonable if it entails undue financial or administrative burdens, *Southeastern Community College v. Davis*, 442 U.S. 397, 412 (1979), or requires "fundamental" or "substantial" modifications, *Alexander v. Choate*, 469 U.S. 287, 300 (1985).

The village does not contend that granting the exception is infeasible or impractical, or that it would entail undue burdens.[12] Rather, it argues that if the reasonable accommodation provision requires the village to grant the exception, then the village loses its legislative discretion under sec. 62.23(7)(i)1., Stats., and for a court to impose such a loss would be an unreasonable accommodation. The argument is one of law, and we reject it.

The argument is based on a false assumption. The accommodation provision in 42 U.S.C. § 3604 does not require a municipality to surrender its discretion under sec. 62.23(7)(i)1., Stats., whether to grant an exception to the distance restriction. The federal stat-

---

[12] The only evidence we find in the record regarding the group home's impact on the village came from Tellurian's president. He testified that the "home would have absolutely no adverse impact on the village," with no effect on property values, traffic, sewer and water services, or police and fire protection.

216

ute requires only a "reasonable" accommodation. If the requested exception is infeasible or impractical or would impose undue financial or administrative burdens, the municipality need not grant it. The village cites no evidence that such problems would arise were it to grant the exception. In the absence of such problems, accommodation by a grant is reasonable.

■

Moreover, a municipality's discretion under ch. 62, Stats., is not unlimited. A municipality must exercise its statutory discretion reasonably and in accordance with the law. We may reverse a municipality's decision to deny a special exception if the decision is arbitrary, oppressive, or unreasonable. *Town of Hudson v. Hudson Town Bd. of Adjustment*, 158 Wis. 2d 263, 275, 461 N.W.2d 827, 831 (Ct. App. 1990).[13]

■

The only reasonable inference is that granting the exception was feasible, practical, and would not entail undue burdens to the village. We therefore conclude that the village violated the FHA by failing to reasonably accommodate Tellurian.

---

[13] The village also argues that the reasonable accommodation provision does not apply to local legislatures and their decisions. The federal district court analyzed and rejected the argument. *United States v. Village of Marshall*, 787 F.Supp. 872, 876–78 (W.D. Wis. 1991). The federal court's reasoning is persuasive and we accept it. *See also Oxford House, Inc. v. Township of Cherry Hill*, 799 F.Supp. 450, 461 (D. N.J. 1992) (reasonable accommodation provision applies to town's decision to deny a certificate of occupancy to a group home); *United States v. City of Taylor*, 798 F.Supp. 442, 447 (E.D. Mich. 1992) (reasonable accommodation provision applies to city's refusal to rezone property for adult foster care home).

## VI.

Tellurian seeks a judgment declaring that the statutory distance restriction in sec. 62.23(7)(i)1., Stats., violates the FHA. A declaratory judgment action cannot be brought unless a justiciable controversy exists. *Weber v. Town of Lincoln*, 159 Wis. 2d 144, 146–47, 463 N.W.2d 869, 869 (Ct. App. 1990). A justiciable controversy exists when (1) a claim of right is asserted against one who has an interest in contesting it, (2) the controversy is between persons whose interests are adverse, (3) the party seeking relief has a legally protectible interest in the controversy, and (4) the issue involved is ripe for judicial determination. *Id.* at 147, 463 N.W.2d at 869.

No controversy exists between the parties regarding the distance restriction. The federal court granted Tellurian an exception to the statute. Valid or not, the statute no longer impedes Tellurian's plans to develop its proposed group home. For that reason, we do not decide whether sec. 62.23(7)(i)1., Stats., violates the FHA.

## VII.

Because the village failed to make a reasonable accommodation by refusing to grant the exception to Tellurian, we remand the case for a determination of damages and attorney's fees under 42 U.S.C. § 3613(c).

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.